Counsel, you may proceed. Good morning, Your Honor. Mario Valencia on behalf of the appellant, Orlando Ray Vasquez. In this case, we're asking the court that Mr. Vasquez be re-sentenced. And there are really two reasons we're asking for Mr. Vasquez to be re-sentenced or why he needs to be re-sentenced. One was he was sentenced under a mandatory guidelines scheme. He was sentenced, I believe, in 2004. And there were several things that the court did not take into consideration. As a matter of fact, he believed he could not take those into consideration. One being the super acceptance of Mr. Vasquez in this case. The other being his severe mental health issues. And then the other reason is that we believe the district court erred in concluding that Mr. Vasquez is a career offender in this case. So I'll address the first issues first about the mandatory guidelines scheme. Under the mandatory guidelines scheme, well, just to give you a little bit of background as to Mr. Vasquez, he robbed a Wells Fargo bank in Las Vegas in September of 2003. This was, I believe, September 9th of 2003. Ten days later, he turned himself in to the FBI. When he turned himself in to the FBI, the story that he gave them was that he moved from California to Las Vegas. And one day, him, and John, and Frank, last thing you want to know, drove a stolen vehicle over to the Wells Fargo bank. They were smoking speed, apparently, at that time. And John was twirling around a gun. And I don't know, but I believe he pointed it at Mr. Vasquez, told him he needed to write this note. Mr. Vasquez writes a note, goes into the bank, hands the note to the teller. The teller reads the note and says, I can't cash a note. And he points to it. Let me halt for just a second. I mean, your client is not the sharpest tool in the shed, and that's true for a lot of people that come in front of us, I'm afraid. Let me focus a little more specifically on the problem posed here, which is that at the time of the initial sentencing, we're in the pre-advisory guideline era. There were still things the district court could do to depart. There are still cases where the district court could determine this case was exceptional, outside the heartland, so on and so forth. The district judge did none of that. When the case went back to the district judge and, in effect, sentence was re-imposed or judgment was re-entered because of the notice of appeal problem, by that time we were in the Booker world. And the district judge acknowledged that fact and made clear that wouldn't have changed his sentence at all. Why shouldn't we pay attention to the fact the judge said, look, I know everything that you're now telling us. That doesn't change my mind what the appropriate sentence was. Well, I think that we shouldn't pay attention to the district court in that sense because when he did not know everything with regard to Mr. Vasquez's severe mental health issues. As a matter of fact, the PSR states that they requested information, but they had not yet received it. There was not a psych evaluation done because there couldn't necessarily be one done at the time. If you look at the memorandum that was submitted on behalf of the defense, it's like two and a half pages, and they just mentioned that he suffers from these severe mental health issues. At the time, there had been recently an amendment to the guidelines saying you're not supposed to take these things into consideration even though he fell under the old guidelines where the court could have taken them into consideration. And under Amlene, in cases afterwards like Montgomery, this court has said that the district court, before he enters such a ruling saying, look, the advisory guidelines wouldn't have changed anything, in my opinion, is supposed to request in writing that counsel submit something to him as to why they believe now the advisory guidelines should change the sentence that he imposed. He didn't do that in this case. As a matter of fact, Mr. Vasquez, who it's documented suffers from severe mental health issues, was representing himself pro se in this case under the 2255 motion that he had to file once he was in prison. And so the court, simply by looking at it, first, there wasn't a request for a resentencing hearing. That's nowhere in the 2255 motion. The government doesn't address it in their response to the 2255 motion. And Mr. Vasquez throws it in as a throwaway in his reply to their response in support of his 2255 motion, says, oh, by the way, I'd like a resentencing hearing. And the court, in a one-sentence blurb, just says, ah, the advisory nature of the guidelines wouldn't have changed my determination. Not only did the judge say the advisory nature of the guidelines wouldn't have changed my sentence, but he gave him the lowest sentence he could have received. Under the guidelines, that's right. Right. I mean, he went to the bottom. He went through the 3553 factors. He went through them all. Yes. And after he got all the way through, then he gave him the lowest sentence, and then he gets it back and he says, hey, I looked at all this once before. I had a chance to do what I needed to do, and it won't matter what next comes. I've given the sentence I was going to give. Why do I send it back just to let him say it again? Well, the reason you send it back is the reasons that I'm stating here is, one, he gave him the lowest sentence he could give under a mandatory scheme of 151 months after incorrectly determining that he's a career offender. That's not the lowest sentence he could have given in this case. Well, let's go to the incorrectly suggesting that he's not a career offender since you bring it up. If that were the case, if he incorrectly found that, why didn't somebody object? Well, we're here... Why didn't somebody do something about it at the hearing? I mean, it came in. The PSR was right there. Everybody had a chance to tell the judge, hey, this is not true. We don't agree with this. This is not the way it ought to be. Nobody said a word. Right. And so the judge said, well, you have any problem with this? No. Do you have any objection to the appeal? No. And then the defendant said, there are no errors or matters that he wished to call to the attention of the court. Yeah, that's the court saying that as to what Mr. Vasquez said. That's correct. He does say that. But we're here because he had ineffective assistance of counsel. That's why we're here. He filed his own 2255 motion claiming ineffective assistance of counsel when he wanted to appeal. The fact is, defense counsel was asleep at the wheel. Didn't file the notice of appeal. This guy had to do his own 2255 motion later. That was granted. The government conceded he had ineffective assistance of counsel. So we're all humans, and so counsel made a mistake. So why don't we send it back and let you bring your ineffective assistance of counsel, as you normally would, with some more preparation, doing what you need to do. Go that way, rather than try to do it in a backhanded manner in this situation. Well, the reason we have to do it is because this court has set out certain requirements that have to be met. Plus, it's the government's burden to prove clearly and unequivocally in a situation like this, where Mr. Vasquez, one of the felonies that they're relying on, is a felony in California under Statute 459. It's burglary or robbery. They have the burden to show clearly and unequivocally because this court has held that that statute is not categorically a crime of And it's their burden to prove it, and they didn't do it. What rules suggest it's their burden? What? When you don't object. Well, there's a case called United States v. Black. Okay. Where Betty Fletcher decided that case. And there's cases that we cite in our brief, in our opening brief, in our reply brief, which I can pull out and cite to the court. Are you suggesting they have the burden as to what? As to enhancements? Is that where you're going? Sure. On the career offender enhancement, of course it's their burden. They can't just rely on the PSR. There's a ton of cases from this circuit that say that. You can't just submit a PSR and say that's sufficient evidence that he's a career offender. It has to be supported by documents like a judgment, which there is no judgment in this case, the plea memorandum, which he signed, or there has to be a plea colloquy showing the facts that he did. And again, this is not categorically a crime of violence. So this court then requires the district judge to have engaged in some sort of a modified categorical approach. He did none of that in this case. If it's okay, I'd like to reserve the rest of my time for rebuttal. You may. Thank you. Good morning. Counsel, Judge Gould, I'd just like, at some point in your argument, please address whether there's any precedent on whether a PSR that's not objected to can be considered in the modified categorical assessment. Good morning. May it please the Court and opposing counsel, my name is Ray Gatineau and I represent the United States in this case. The two issues that I'd like to address are one, whether there should be an ammaline remand in this case, and two, whether the district court erred in finding that the defendant was a career offender. And the standard of review for both of those issues is a plain air standard. And addressing the first issue that he brought up with regard to the ammaline remand, I believe it's important to recognize that ammaline specifically says that a defendant gets a remand only if the record is insufficiently clear to conduct a plain air analysis. In other words, is the record insufficiently clear to determine whether the district court would have sentenced the defendant to the same term had he known that the guidelines were advisory in nature? And in this case, the record is abundantly clear because Judge Dawson, in excerpts of record number 101 in his 2255 order, he explicitly stated that his sentence would have been the same, notwithstanding the advisory. And ammaline, the court's en banc decision was explicit in saying when a case went back to a district court on limited remand, the court was required to hear from counsel, didn't have to have a whole resentencing hearing, but was expected to hear from counsel before opining as to whether or not the sentence would have been any different. There was no equivalent of that here that I can see. Isn't that a concern? Yes, that is correct, Your Honor. However, this case was never remanded back to the district court, and therein lies the distinction. If this court were to find that it was remanded back to the district court, it would have been the same. But you're telling us, in effect, that it's just the same. Well, if in ammaline the en banc court would have been satisfied by hearing directly from the judge, didn't think that was erroneous, it presumably wouldn't have imposed the requirement that the judge hear from counsel before speaking. Having said that the judge should hear from counsel before speaking, that piece is missing here. And I guess you can suggest that's not plain error, but it's a piece that's missing. Is there any substitute to that piece? Any reason why this Court should have confidence that counsel had nothing to say or, I guess in the case of Mr. Vasquez, he was not represented at that time. Yes, Your Honor. In fact, all of the arguments that are expressed in the appellate brief and the arguments that were made by defense counsel at the lower court were, in fact, considered by the district court. And I will point out, it was defense counsel had mentioned that the defendant's severe mental health issues were not known by the judge. And I will point out in the PSR, in paragraph number 66, it specifically states that he was documented to have severe mental health issues. Additionally, prior to the sentencing, defense counsel filed a sentencing memorandum and departure motion. And in that motion, she stated that the court should sentence the defendant below the guideline range for superexceptance and also for his mental health issues. Additionally, when they were at the sentencing hearing, she again orally argued to the court that he should sentence the defendant to a term below the guideline range for those two reasons, for his mental health issues and superexceptance. Then for a third time on the 2255 motion and in the defendant's response, he again asserts the superexceptance and the mental health issues. And in addition to that, he asserts a couple of other grounds. He says that he should be sentenced as a first-time offender. He attaches a letter to Wells Fargo Bank showing that he apologized for committing the robbery. And additionally, he submitted a certificate showing that he completed a victim impact course. So he yet presented additional evidence at that point to the district court, giving the court notice and advising the court that he should get a lower  Now, Judge Dawson has stated that his sentence would be different. Judge Dawson essentially is telling us, all of us here, that a remand is not necessary. And to remand under Ammaline would be putting form over substance. And it would not serve the interest of judicial economy, because we already know what Judge Dawson would do. Now, with regard to the second ---- Let me ask you one question about that. My colleague suggested that we need some written advice from counsel. We also said in our Ammaline remands that we would like the judge to sufficiently express an appropriate explanation of the reasons that he did what he did. If I read the record, there isn't much about why the judge did that. If I have to get to that, I have to go back to record that he used when he was doing the sentence in the first place. I really can't suggest that there's much in this record that would tell me why he did what he did. Yes. And there is case law that states that the judge is not required to go through on the record and explicitly address every one of the section 3553 factors. But did he address at all when he was doing this? But he did. In excerpts of record number pages 44 and 45, he did go in there. And I quote, he says, ''Pursuant to 18 U.S.C. section 3553, the court is required to give a statement of reasons.'' And he stated that the defendant had two prior convictions for crimes of violence and that his efforts towards rehabilitation had been futile. And there are some aspects of the defendant's statements regarding his fear of others that indicate that he may have reasons in his own mind for his actions that would be justified. But the court continues and states that he believes that the sentence that is imposed would provide opportunity for rehabilitation. And since you brought up the other particular issue here, which Judge Gould, I think, persuasively asked you to talk about, it seems to me that we ought to go back to how do we have any idea on this record that the government has met their burden of proof as to enhancements? Now, with regard to the burden of proof, there is a case on point that's U.S. v. Charlesworth. And that case states that the government does have the burden of proof to prove these prior enhancements by a preponderance of the evidence when the defendant does not object to the PSR and does not object to those enhancements. Had the defendant objected to it, then the government's burden would have been to prove those prior enhancements by clear and convincing evidence. And Ameline and a string of other cases have stated that an uncontested PSR, a district court, can rely on those statements therein. And when we look at the PSR and we see the assault, great bodily injury, and the residential burglary, it is clear that both of those are crimes of violence. Well, let's stop there. In particular, the burglary conviction. As I understand, that was under California Penal Code 459? Correct. And I think it's the case law of this Court that that does not categorically qualify. Well, there is a case, U.S. v. Becker, that did state that California residential burglary is categorically a crime of violence. And Section 459 defines the broad general burglary statute, and 460 tells us what the punishment is. But U.S. v. Becker did stand for the proposition that the California residential burglary is categorically a crime of violence. But even assuming if the Court does not want to adopt that approach, even under a modified categorical approach, if you look in the supplemental excerpts of record at page 13, there's a plea agreement that is signed by the defendant, by his defense counsel in California, and it specifically states what he was pleading guilty to was residential burglary. So even under a modified approach, the government has proven, certainly by preponderance of the evidence, that that is a crime of violence. Additionally, I will point out that United States v. Black... The documents you've identified in the supplemental excerpts, were they in front of the district court? No, they were not. And they were not because the defendant in this case has challenged his prior convictions for the first time on appeal. Had he objected to the PSR earlier on, the government would have had an opportunity to provide the lower court with these documents. And we ask that this court take judicial notice of these documents, as this court has recognized in the Borneo case, and also United States v. Black, that this court can't take judicial notice of the federal judicial system, provided that, of course, those documents directly relate to an issue that's on appeal, and this is the issue that's on appeal. There's no way for the government to meaningfully address this issue but for it to provide these documents to the court. So the bottom line of your argument is that the case law that we have on the books, suggesting that it is the government's burden to prove, by the preponderance of the evidence, all of these particular enhancements by providing the records, by providing the records of conviction to the court, and certainly has to provide more records when it deals with different types of records or different types of crimes that may come, that that burden is escaped when the defendant does not object to the PSR. Is that your argument? Well, our argument is that the PSR ---- Because there was none of those records in front of the district court. That's correct. The only thing the district court had was just a PSR that said what the thing was, and there was nothing else said. And so you're suggesting that our case law is so specific that we should follow right along behind it and suggest that, without an objection to the PSR, as to what it said, as to what the situation was, that the government has no further burden to produce the records. Is that your ---- Is that your argument? In the absence of an objection, yes, Your Honor. And Amaline specifically says, quote, Of course the district court may rely on undisputed statements in the PSR at sentencing. So it's the government's position that this undisputed PSR does prove by a preponderance of the evidence that he does have two prior crimes of violence that would make him a career offender. That's what the government's argument is on that particular point. I will point out things would have been very ---- Was the Amaline counsel, was the statement in Amaline to which you're referring to, was that related to a modified categorical approach? I'm not certain, Your Honor. I would have to ---- I cannot remember. Because I don't recall Amaline having, you know, really addressing Taylor categorical or modified categorical in this sense. So, you know, obviously when we're not talking about proving a career offender status, and there's just general evidence in a PSR to which there's no objection, the district court can consider that. You know, but this issue is a little different. Yes. To allow a defendant to relitigate all of these issues on appeal, if the court were to remand in this particular instance, essentially what the court would be doing would be encouraging defendants to stand silent or yet state on the record they do not object to the PSR. And if the court then enhances the defendant's sentence, he then knows, well, now I can later relitigate all these issues on appeal. Okay. Well, back to my first question to you at the outset. Like, is there any case that says we can rely on a PSR to which there's no objection in making a modified categorical analysis? You've told me you don't know if Ameline addresses that. I'll take another look at it, but I really didn't think that it did. So I'm looking for a case that addresses the PSR in this context. Okay. If I may, I'd be happy to supplement the court with that case, if I may, and have an opportunity to research that issue. Thank you. And I'm past my time. Thank you. Thank you. Roboto. I'd like to start out by clarifying something that counsel just stated about Becker. The question had to do with whether or not 459 is categorically a crime of violence or not. And, in fact, Becker is a 1990 case that deals with 460, and counsel conceded that 460 is actually the penalties. But Snellenberger, I think that's how it's pronounced, is a 2007 case out of this circuit that specifically states that 459 is not categorically a crime of violence. It is broader, and so you have to engage in the modified categorical approach. But Snellenberger you can't rely on, can you, because it's been taken en banc and, therefore, you can't rely on that case? Honestly, I don't know why it's en banc. But if it is on that point, then I would concede that it's probably not. Well, the order suggests you can't cite it. So that's the only reason I put that in front of you. Well, was it en banc when we cited it? I don't remember. Okay. So we'd have to take a look at that. But either way, it's the order. Are we going to accomplish anything here? I mean, the government's position is that, look, when we finally get to the documents, those are going to demonstrate under the modified categorical approach that this was a residential burglary. Is that true? No, it's not true. And here's why. He mentions in his supplemental excerpts of record number 13, and he calls it a plea agreement. It's not a plea agreement. It's a declaration of the defendant. And when you have to engage in the modified categorical approach, you're beyond looking at just a document that has on it the statute, which, by the way, the PSR in this case didn't even have the statute he was convicted under. It had nothing except a police report, information for police report. But what you have then in number 13 is not the facts of this case. You simply have that he's pleading guilty to first-degree burglary. And then there's a blurb in there with first-degree RES, I think, period, burglary, is what it says in the supplemental excerpts of record. There's nothing in there that states what exactly were the facts of this case, which the Court would have had to look at under the modified categorical approach to determine if all of the elements were met to qualify as a violent crime under the U.S. sentencing guidelines. He didn't do that. He didn't engage in any of that. None of these documents were presented. Counsel says, well, if we had objected then, that would have provided them with the opportunity. We don't need to object to provide them with the opportunity. But you still have the issue of prejudice. And if it turns out the documents that are uncontested, whether they were submitted or not, are going to demonstrate that under the modified approach, this was a residential burglary that qualifies as a crime of violence, then we're wasting our time to send it back. There's no prejudice. So looking at the documents that are there, I take it your position is they don't satisfy what's necessary under the modified categorical approach. That's absolutely our position. So far they do not. And I'm past my time. Thank you. Thank you. I thank both counsel for their arguments. The case just argued is submitted.
judges: Gould, Clifton, Smith